IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AMERICAN WELDING & GAS, INC., | CV 18-151-BLG-TJC |
| Plaintiff/Counter-Defendant, | |
| vs. | **ORDER** |
| WELDWORLD CORPORATION, | |
| Defendant/Counter-Claimant. | |

Plaintiff American Welding & Gas, Inc. ("AWG") originally brought this action in the Montana Thirteenth Judicial District Court in Yellowstone County on September 17, 2018, to recover past due payments and attorney fees on a contract for compressed gas supplied to Defendant WeldWorld Corporation ("WeldWorld"). (Doc. 5). The Complaint was served on WeldWorld on October 1, 2018 and removed to this Court on October 22, 2018. (Docs. 1, 1-2.) WeldWorld alleged diversity jurisdiction and an amount in controversy exceeding $75,000 under 28 U.S.C. § 1332. (Doc. 1 at ¶¶ 6-7.) WeldWorld answered and ultimately asserted a counterclaim against AWG, claiming it had been overbilled by AWG. (Doc. 24.) A preliminary pretrial conference was held, and a scheduling order was entered on December 20, 2018. (Doc. 20.)

1

On June 19, 2020, the Court granted the request of WeldWorld's counsel to withdraw, and ordered WeldWorld to retain new counsel within 30 days.  (Doc. 51.)  The Order further stated that if WeldWorld was unable to secure counsel's appearance within that time, it was required to show cause why an appearance was not possible.  WeldWorld failed to retain new counsel or show cause why it had not done so.  AWG subsequently moved the Court for default judgment.  (Doc. 52.)

The Court ordered WeldWorld to appear and show cause why it should not be held in default for failing to comply with the Court's Order and set a hearing for August 24, 2020.  (Doc. 55.)  WeldWorld did not appear.  (Doc. 56.)  As a result, default was entered against WeldWorld pursuant to Fed. R. Civ. P. 55(a) on August 24, 2020.  (Doc. 58.)

 The Court also set a default judgment hearing for September 14, 2020. (Doc. 57.)  WeldWorld again did not appear at the hearing.  AWG appeared, testimony was heard from Kevin Adkins, a Senior Vice President for AWG's Western Division, and certain exhibits were received into evidence.  (Doc. 59.) AWG filed proposed findings and conclusions on September 18, 2020.  (Doc. 60.)

For the following reasons, the Court finds default judgment should be entered in favor of AWG and against WeldWorld in the total amount of $473,288.78.

I.     **Background**

After the entry of default, the factual allegations of the complaint are accepted as true, except those relating to the amount of damages.  *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977).  Consequently, the following facts are taken from AWG's Complaint.  (Doc. 5.)

AWG is a North Carolina corporation that has an office and plant in Billings, Montana.  (*Id.* at ¶ 1.)  WeldWorld is a Canadian corporation that started doing business with AWG's Billings plant in early 2006, purchasing machinery, equipment, cryogenic gases, and compressed gases.  (*Id.* at ¶ 5.)  Thereafter, AWG regularly sold compressed and cryogenic gases to WeldWorld through its Billings-based plant.  (*Id.*)  WeldWorld paid invoices to AWG's Billings office.  (*Id.* at ¶ 8.)  In 2010, the parties entered into a formal written contract.  (*Id.* at ¶ 9.)  Between 2010 and 2015, AWG supplied WeldWorld with approximately 450 cylinders of compressed gas per month.  (*Id.*)  WeldWorld rented most of the cylinders from AWG.  (*Id.*)

The parties executed their current contract on December 17, 2015.  (*Id.* at ¶ 10.)  Under the terms of the contract, AWG supplied gas-filled cylinders to WeldWorld, who in turn paid AWG for gas as well as rent on the cylinders.  (*Id.*)  WeldWorld also shipped cylinders it owned to AWG for filling.  (*Id.*)  The parties performed under the contract until Spring 2018, when WeldWorld began

withholding payments.  (*Id.* at 4, ¶ 12.)  Between January 1 and September 14, 2018, WeldWorld accrued a debt of $321,384.39.[1]  (*Id.* at 4, ¶ 12.)  Of that amount, $193,090.91 was more than 61 days past due, violating the terms of the contract. (*Id.*)

AWG provided formal notice of default on August 29, 2018.  (*Id.* at ¶ 13.) The notice placed terms for all future payments to be C.O.D. as of September 7, 2018, which WeldWorld performed through the filing of the instant action.  (*Id.* at ¶ 14.)

The contract also contained a provision requiring WeldWorld to pay all costs and expenses of collection, including attorney fees, if AWG had to take action to enforce its rights under the contract.  (*Id.* at ¶ 16.)

## II.   Discussion

### A.   Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707,

---

[1] The Complaint contains a duplication of paragraphs 10 through 15, which appear to be the same, except the first paragraph 12 contains the amount due on WeldWorld's account as of August 29, 2018, and the second paragraph 12 sets out the amount due as of September 14, 2018.  (See Doc. 5 at 3 and 4.)  The duplication is unexplained, but WeldWorld had notice that AWG was claiming a total past due amount of $321,384.39 at the time the Complaint was filed.

712 (9th Cir. 1999).  Here, the Court has jurisdiction pursuant to 28 U.S.C. § 1332

because the parties are diverse and the amount in controversy meets the

jurisdictional threshold.  AWG is a North Carolina corporation with an office and

plant in Billings, Montana; WeldWorld is a Canadian corporation with its principal

place of business in Edmonton, Alberta.  (Docs. 1 at ¶ 5; 5 at ¶¶ 1-2.)  The amount

in controversy exceeds the jurisdictional requirement.  (*Id.* at ¶ 4.)  WeldWorld is

also subject to the Court's personal jurisdiction because the claim involves a

contract formed and performed in Montana, and because WeldWorld previously

appeared in this action voluntarily.  Mont. R. Civ. P. 4(b)(1)(A); (b)(2)(B); (*see*

Docs. 1 at ¶¶ 2, 6; 8 at ¶¶ 2, 6.)

   **B.     Entry of Default Judgment**

       The entry of default judgment against a party is governed by Fed. R. Civ. P.

55(b).  If the claim is for a "sum certain or a sum that can be made certain by

computation" the clerk must enter judgment for that amount against the defaulting

party.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the party must apply to the court

for a default judgment.  Fed. R. Civ. P. 55(b)(2).

       The decision to grant default judgment under Fed. R. Civ. P. 55(b)(2) is left

to the court's discretion.  *Albade v. Albade,* 616 F.2d 1089, 1092 (9th Cir. 1980).

In deciding whether default judgment is appropriate, the following factors may be

considered: "(1) the possibility of prejudice to the plaintiff, (2) the merits of

plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The first *Eitel* factor weighs in favor of default.  After being served with AWG's Complaint, WeldWorld removed the action to this Court and was represented by local counsel.  Approximately 18 months later, however, WeldWorld's counsel was permitted to withdraw.  Since then, WeldWorld has failed to retain counsel.  The failure of a corporation to secure counsel after having been given ample time for doing so may result in the entry of default judgment against the Corporation.  *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993).  WeldWorld has also failed to comply with the Court's orders, and has failed to otherwise defend this action.  In light of WeldWorld's apparent unwillingness to participate in this action and comply with the Court's orders, AWG "will likely be without other recourse or recovery" if the Court does not enter default judgment.  *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Prejudice to AWG is therefore clear.

The second and third factors are also met.  AWG alleges facts which state a plausible claim for relief for breach of contract against WeldWorld.  Under

Montana law, the essential elements of a contract are: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration."  Mont. Code Ann. § 28-2-102.  AWG has alleged WeldWorld entered into an oral contract as early as 2008 and written contracts in 2010 and 2015 for the purchase of compressed gases and rental of cylinders.  (Doc. 5 at ¶¶ 7, 9-10.)  Both parties performed under the contract for years.  (*Id.* at ¶¶ 8, 11.)  Then, in Spring 2018 WeldWorld began withholding payments, fell into arrears, and defaulted on the contract.  (*Id.* at ¶¶ 12-13, 17.)  Thus, AWG's claim has merit and the Complaint is sufficient.

Under the fourth factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176; see *Eitel*, 782 F.2d at 1471-72.  Here, the amount of money at stake is significant.  But it represents the unpaid value of goods which have been provided by AWG to WeldWorld.  The measure of damages for the breach of an obligation arising from a contract is the amount that will compensate an aggrieved party for its loss.  Mont. Code Ann. § 27-1-311; *AWIN Real Estate, LLC v. Whitehead Homes, Inc.*, 472 P.3d 165, 170 ¶ 20 (Mont. 2020).  That is, the nonbreaching party should be made whole, as if the contract had been performed.  *Cut Bank Sch. Dist. No. 15 v. Rummel*, 58 P.3d 159, 161 ¶ 8 (Mont. 2002).  The damages claimed here are not greater than what is necessary to do so.  Thus, the

amount at stake is proportional to WeldWorld's conduct in breaching the contract. This factor also weighs in favor of default judgment.

The fifth and sixth factors also weigh in favor of default judgment. After WeldWorld's counsel withdrew, it had ample time to obtain new counsel, ample warning that it risked default unless it obtained counsel, and then failed to do so. (Docs. 51, 52, 55-59.) WeldWorld did not take any further action to defend itself. Upon entry of default by the Clerk of the Court, the factual allegations of the Complaint related to liability were taken as true. *Geddes,* 559 F.2d at 560. Accordingly, the possibility of a dispute concerning material facts no longer exists, and there is no indication that WeldWorld's default is due to excusable neglect. Further, WeldWorld has not made any attempt to set aside its default since it was entered on August 24, 2020. (Doc. 58.) Therefore, both the fifth and sixth factors favor default judgment.

Finally, the seventh factor does not weigh against the entry of default judgment. Although cases should be decided on the merits whenever possible, "this preference, standing alone, is not dispositive." *PepsiCo,* 238 F. Supp. 2d at 1177. Fed. R. Civ. P. 55(b) allows the court to enter a default judgment if a defendant fails to defend against an action. *Id.* Here, WeldWorld's failure to participate in this litigation makes a decision on the merits impossible. The federal rules provide for the entry of default judgment in these circumstances.

Therefore, after consideration of the *Eitel* factors, the Court finds that the entry of default judgment is appropriate.

## C.    Damages

To recover damages after securing a default judgment, the plaintiff must provide evidence of its damages through admissible evidence.  *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

### 1.    Breach of Contract

AWG presented the testimony of Kevin Adkins and proffered supporting exhibits at the default judgment hearing.  (*See* Doc. 59.)  Adkins testified that WeldWorld's outstanding balance on its account as of September 14, 2020 was $966,792.70.  (*See* Docs. 59 at 12; 62 at 6.)  AWG also seeks the value of replacement costs for 1,976 cylinders retained by WeldWorld, which Adkins testified totaled $427,270.35.  (Docs. 59 at 13; 62 at 7.)

Nevertheless, the Court cannot enter default judgment for an amount greater than that demanded in AWG's Complaint.  Fed. R. Civ. P. 54(c) requires that a default judgment "not differ in in kind from, or exceed in amount, what is demanded in the pleadings."  In *Anunciation v. W. Capital Fin. Servs. Corp.*, the Ninth Circuit explained that "[t]he theory underlying this rule is that 'once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and

money necessary to defend the action.'"  *Anunciation v. W. Capital Fin. Servs.*

*Corp.*, 97 F.3d 1458, 1996 WL 534049 *3 (9th Cir. 1996) (quoting 10 Wright,

Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 2663, p. 139 (1983)).

In other words, the defendant must be given reasonable notice of the potential

amount at stake.  *Id.*  This limitation applies regardless of whether the default was

entered because of the defendant's failure to appear, or where the defendant

appeared but subsequently failed to defend the action.  Wright, Miler & Kane,

*Federal Practice and Procedure*, Civil 4th § 2663, p. 178 (2014) ("at any point in

the case a defendant is entitled to determine his maximum liability, as fixed by the

ad damnum as it stands at that point in the case and decide whether to proceed

further.  If defendant chooses not to proceed, liability cannot be increased.")

Additionally, if default judgment is entered that is either greater than or different in

kind from that requested in the complaint, the judgment is null and void and may

be collaterally attacked in another proceeding.  *Id*. at 173-75.

When the Complaint was filed, AWG alleged that WeldWorld had incurred

debt totaling $321,384.39.  (Doc. 5 at ¶ 12.)  AWG further stated it "intend[ed] to

enforce its rights under the contract . . . throughout its remaining term which

means, among other things, it will remain the exclusive supplier, will receive

payment on a C.O.D. basis, will receive rent for [WeldWorld's] use of the

cylinders and will recover its property on the termination of the contract."  (*Id.* at ¶

15.)  But the Complaint also made clear that the scope of the relief sought in this action was limited to WeldWorld's past due debt, stating this "*[s]uit is brought only to recover the payments which are now due.*"  (*Id.*) (Emphasis added.)  AWG also specifically sought the recovery of attorney fees for the costs and expenses incurred in collecting on the debt pursuant to the terms of the contract.  (*Id.* at ¶ 16.)

Consistent with this demand, AWG prayed to recover "judgment against WeldWorld in an amount that will fully compensate it for all losses it *has* incurred along with an award of attorney fees and all costs of collection that *have been or will be incurred* in collecting the sums it is owed along with such further relief as may be deemed just." (*Id.* at ¶ 17) (Emphasis added.)  In short, AWG requested a sum certain for the amount WeldWorld was in arrears, together with attorney fees and costs incurred in collecting the same.

The Court acknowledges the Ninth Circuit has held that a plaintiff may recover more than an amount stated in a complaint if the prayer for relief also demands such additional damages which may be proved at trial.  See e.g., *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974), *cert. denied*, 419 U.S. 832 (1974).  The *Henry* Court reasoned that a defendant in those circumstances would know the plaintiff sought "additional amounts" to the sum stated in the Complaint, which were to be determined "at the time of trial." *Id.* at 317.

But that is not the case here.  AWG's Complaint clearly states that it only sought "to recover the payments which are now due"; i.e., the sum of $321,384.39 specifically alleged in the Complaint.  The Complaint does not request the recovery of future damages or for additional damages that may be proved at trial, and it makes no mention of the recovery of the replacement costs for cylinders used by WeldWorld.  Since the Court cannot award damages which are different in kind or exceed the amount demanded in the Complaint, AWG's recovery for its breach of contract claim is limited to $321,384.39.[2]

Therefore, the Court finds that AWG is owed $321,384.39 in breach of contract damages.

### 2.    Attorney Fees

AWG also seeks attorneys' fees under the terms of the contract.  (*See* Doc. 5 at ¶ 16; and at 10, ¶ 6.)  As discussed above, this Court's jurisdiction is based on diversity of citizenship.  "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law."

---

[2] The Court presented AWG with the opportunity to submit a memorandum on the award of damages at the default judgment hearing, explaining how AWG can recover damages differing from those alleged Complaint.  (*Id.* at 11:10-20.) AWG did not do so.

*Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  Accordingly, Montana

law will be applied to determine the amount of attorney fees recoverable by AWG

in this case.

In general, Montana law provides that an award of attorney fees must be

reasonable.  *Folsom v. City of Livingston*, 381 P.3d 539, 547 (Mont. 2016).  The

reasonableness of attorney fees depends on the facts of each case, which includes

consideration of the following nonexclusive factors:

> (1)  the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003).

Adkins testified that AWG had incurred attorneys' fees in the amount of

$151,904.39 in the prosecution of its claims against WeldWorld.  (Docs. 59 at 14;

62 at 7-8.)  After reviewing the *Plath* factors and other relevant considerations, the

Court cannot conclude that the fees are unreasonable.

As to the first two factors, this matter was pending for approximately 18

months before the withdrawal of WeldWorld's counsel.  During that time, it

appears the case was aggressively litigated.  Mr. Adkins testified that there was

extensive written discovery.  (Doc. 62 at 8.)  Additionally, he testified that

approximately10-12 depositions were conducted.  The parties prepared for and

participated in a settlement conference before U.S. Magistrate Judge John Johnston.  At the time of the withdrawal of WeldWorld's counsel, discovery had been complete, and a final pretrial conference and trial had been scheduled.  (Doc. 46.)  Therefore, at the time of withdrawal of WeldWorld's counsel, the matter had been fully litigated to the point of trial preparation.  After the withdrawal of WeldWorld's counsel, AWG was also required to pursue default judgment for WeldWorld's failure to defend.

As to the character and importance of the litigation, this was a contract dispute between a North Carolina corporation and a Canadian corporation.  It involved a long-term business relationship, where AWG was the exclusive supplier of gas to WeldWorld.  Through this agreement, AWG supplied approximately 5,400 cylinders of gas per year to WeldWorld for its business operations.  Therefore, it appears the parties had an extensive, long term relationship, and this litigation relative to the performance of their agreement appears to have been important for both parties.

Regarding the amount of money or value of property affected, WeldWorld's recovery is limited by the sum certain stated in its Complaint.  Nevertheless, this case is part of a larger dispute between the parties, in which AWG claims almost $1,400,000 in damages as a result of unpaid goods supplied and replacement costs for its gas cylinders.

As to the fifth and sixth factors, the case involved an international dispute

between corporations in Canada and the United States.  As discussed above, it also

involved a significant claim for damages, and appears to have been aggressively

litigated by both parties prior to the withdrawal of WeldWorld's counsel.

Therefore, the case required experienced counsel.  Both parties were represented

by experienced litigation counsel, all of whom have good standing in their

profession.

As to the results secured, AWG's counsel was ultimately able to obtain a

judgment for the entire amount alleged in the Complaint.

In addition, this Court has previously recognized the difference between a

fee-shifting case – where the attorney fees of one party are being shifted to the

opposing party – and a case where a party is seeking reimbursement for its own

fees and costs incurred.  *Capitol Specialty Ins. Co. v. Big Sky Imaging, LLC*, 2020

WL 1249484 at *6 (D. Mont. February 3, 2020).  In a fee-shifting case, where a

party seeks to recover the value of legal services in pursuing a claim, the

recovering party may be motivated to maximize its recovery of attorney fees from

the opposing party.  In a case seeking recovery of fees actually incurred, however,

the fact that the fees have actually been billed and paid provides some evidence of

reasonableness.  In other words, a party is unlikely to pay commercially

unreasonable fees in the hope that it may ultimately prevail in an action and

potentially be able to recover the fees it has paid from the opposing party.  Here,

Mr. Atkins testified that AWG had actually incurred the fees it seeks to recover in

this action.  (Doc. 62 at 8.)

Considering all of the above, together with the fact that the reasonableness

of the fees has not been contested, the Court cannot find that the fees and costs

incurred in this action are unreasonable.

Therefore, the Court will award fees in the amount requested by AWG,

$151,904.39.

## III.    Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Clerk of

Court is directed to enter default judgment in favor of American Welding & Gas,

Inc. against WeldWorld Corporation in the amount of $321,384.39 for breach of

contract, together with $151,904.39 in attorney fees, for a total judgment amount

of **$473,288.78**.

**IT IS ORDERED**.

DATED this 22nd day of March, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

16